Clarence Curtis JORDAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 68858.

Court of Criminal Appeals of Texas,
En Banc.

June 23, 1982.

Rehearing Denied July 21, 1982.

Ken J. McLean, Roy E. Greenwood, on
appeal only, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Alvin M.
Titus and Terry Wilson, Asst. Dist. Attys.,
Houston, Robert Huttash, State's Atty.,
Austin, for the State.

OPINION

ODOM, Judge.

This is an appeal from a conviction for
capital murder in which the punishment is
death.

In his ninth ground of error appel-
lant argues it was error for the trial court
to deny his challenge for cause to prospec-
tive juror Adkins. The juror was excused
by peremptory strike by appellant after the
court refused his challenge for cause. The
record also shows appellant exercised all of
his peremptory strikes, that his request for
an additional peremptory strike was refus-
ed, and that had he been granted an addi-
tional strike he would have used it against a
juror whom he found objectionable and who
was seated on the jury. This was sufficient
to preserve the issue of the denial of his
challenge for cause for review, and to re-
quire reversal if it is shown the denial of
the challenge for cause was error. *Pierce v.
State*, Tex.Cr.App., 604 S.W.2d 185, 186, and
authorities cited there.

Adkins was challenged for cause un-
der Art. 35.16(c)(2), V.A.C.C.P.:

"That he has a bias or prejudice against
any of the law applicable to the case upon
which the defense is entitled to rely, ei-
ther as a defense to some phase of the
offense for which the defendant is being
prosecuted or as a mitigation thereof or
of the punishment therefor."

The record of the voir dire examination
of Adkins reveals that he could not consider
the minimum punishment of five years for
the lesser included offense of murder. The
State argues that the punishment range for
murder is not relevant to the issue of a
challenge for cause under Art. 35.16, supra,
because appellant was charged with capital
murder. The cases of *Chambers v. State*,

Tex.Cr.App., 568 S.W.2d 313, and *Bodde v. State*, Tex.Cr.App., 568 S.W.2d 344, are contrary to the State's position. In both of those capital murder cases challenges for cause made by the *State* under Art. 35.16(b)(3), V.A.C.C.P., were held proper because the prospective juror could not consider the minimum punishment for murder. If it is proper for the State to exclude a prospective juror in a capital murder case because he cannot consider the minimum punishment for the lesser included offense of murder, it is certainly proper for the defendant to be granted a challenge for cause on the same ground, for if that minimum punishment for the lesser included offense against which the prospective juror "has a bias or prejudice" (Art. 35.16(b)(3) and (c)(2), supra, is a "phase of the law upon which the State is entitled to rely," (Art. 35.16(b)(3), supra) then it certainly is also a phase of the law "upon which the defense is entitled to rely." (Art. 35.16(c)(2), supra.) It was therefore reversible error to deny appellant's challenge for cause made against Adkins. The ground of error is sustained.

The judgment is reversed and the cause remanded.

CLINTON, Judge, concurring.

I agree appellant was entitled to the exclusion of venireman Adams for cause and was, therefore, prejudiced when forced to exclude Adams by exercise of one of his limited peremptory challenges. Accordingly, I concur in the opinion of the Court. I write for the reason that ground of error eleven also presents reversible error which occurred during the punishment phase; I believe it is to the benefit of the bench and bar, as well as the criminal justice system, that we adjudicate capital cases not only swiftly but also completely,[1] so that errors extant will not recur on retrial. With this preface, I turn to a brief recitation of the facts of the case and a treatment of appellant's eleventh ground of error.

Suffice it to say that the State established appellant entered a Rice Food Store under the guise of seeking employment on October 14, 1977; after speaking briefly with the manager, he pulled a pistol and demanded the store's money, as well as the manager's car keys. During this exchange, the deceased, Joe Williams, entered the manager's office. Appellant demanded Williams' car keys and when Williams told him he "didn't drive," appellant shot him once in the chest.[2] After obtaining a bag filled with money, appellant ordered everyone to the back of the store then fled on foot to the parking lot where he attempted to force several drivers at gunpoint to give him a ride, ultimately succeeding with the driver of a black and white Ford. An autopsy revealed that Joe Williams died as a result of a gunshot wound to the right side of his chest.

Appellant's eleventh ground of error contends the trial court erred in overruling his objection to the admission into evidence during the punishment phase of trial, of proof of a 1973 conviction which was obtained when he was a juvenile without the benefit of an examining trial and was, therefore, void under the authority of *Ex parte Trahan*, 591 S.W.2d 837 (Tex.Cr.App. 1980).

The record reflects that outside the jury's presence, the State initially offered as State's Exhibit No. 7, a penitentiary packet containing appellant's prior conviction in Cause No. 182,674 for the offense of rob-

---

1. Art. 37.071(f), V.A.C.C.P., provides in relevant part:

   "The judgment of conviction *and sentence of death* shall be subject to *automatic* review by the Court of Criminal Appeals.... Such review by the Court of Criminal Appeals *shall have priority* over all other cases, ...." [Emphasis Supplied].

2. The proscription under which appellant was prosecuted is contained in V.T.C.A. Penal Code,

Section 19.03(a)(2); it provides in part germane to this case:

   "(a) A person commits an offense if he [intentionally or knowingly causes the death of an individual] under Section 19.02(a)(1) of this code and;

   \*    \*    \*    \*    \*    \*

   (2) the person intentionally commits the murder in the course of committing or attempting to commit ... robbery...."

bery by assault. Appellant objected to the exhibit on the ground that he was a juvenile at the time he was both arrested for, and convicted of, the offense, and there was no indication that an examining trial had been conducted in the district court after the juvenile court had waived its jurisdiction, ordered the proceedings to be certified and transferred the cause to the district court. The defense offered Exhibits Nos. 1 and 2 which contained the entire files maintained on the proceedings in the district court in Cause No. 182,674, as well as the juvenile court file in Cause No. 26,944 respectively. The State affirmatively voiced "no objection" to these exhibits. The trial court summarily overruled appellant's objection and admitted the "pen" packet.

Appellant again raised the issue on motion for new trial. In overruling the contention once again, the trial court opined the prior conviction "was not offered as an enhancement count nor did it in any way enhance the punishment;" instead, it was offered only "to aid the jury in determining [appellant's] propensity for committing such acts in the future,[3] *so the fact of whether it was a void conviction ... wouldn't really be germane* to this issue. * * * [I]t was the act that was offered to the jury in answering the questions."[4] Apparently following the trial court's lead in this regard, the State argues only that admission of appellant's prior conviction at the punishment stage was harmless beyond a reasonable doubt.[5] I am unable to agree with the State for reasons to be fully developed *post* in Part II; first, I turn to a determination of the validity of the conviction in issue.

3. Article 37.071(b)(2), V.A.C.C.P. requires the jury at the punishment phase of a capital trial to determine, "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."

4. Throughout this opinion, all emphasis is supplied by the writer unless otherwise noted.

5. Both by its brief and in oral argument before this Court the State has uniformly insisted that the robbery by assault *conviction* was of no moment, but rather, the appellant's "*acts* giving rise to the conviction" were the thing the

### I.

Defense Exhibit No. 2 reflects a petition to adjudge appellant a delinquent child was filed May 5, 1972, in Juvenile Court No. 2 of Harris County, bearing Cause No. 26,944. This petition alleged appellant had committed a robbery by assault on April 22, 1972. Having been born on April 6, 1956, appellant was barely sixteen years of age at the time of the commission of the offense. Thereafter, on May 25, 1972, the State filed a motion requesting the juvenile court to waive its jurisdiction and certify the proceedings to a criminal district court pursuant to Article 2338–1, V.A.C.S., as amended in 1967. On August 8, 1972, a hearing was conducted on the motion, and the next day, August 9, the juvenile court judge entered an order reciting: "Juvenile Jurisdiction over the said Clarence Curtis Jordan is waived. It is further ordered that these proceedings be certified to and transferred to the 185th District Court of Harris County, Texas."

Also contained in defense Exhibit No. 2 is an order dated August 9, 1972, entered by the Judge of the 185th District Court of Harris County which "assumed" jurisdiction of the cause and ordered appellant's arrest under Cause No. 181,727.

Defense Exhibit No. 1 reveals appellant's indictment for robbery by assault filed in the 176th District Court on August 30, 1972, in Cause No. 182,674. Neither the court's docket sheet, nor any document contained in the file indicates that an examining trial was conducted by the "assuming" district court prior to the return of this indictment.

State sought to demonstrate to the jury. On questioning, however, counsel for the State was unable to point to any delineation of appellant's "acts" contained in the "pen" packet, and in rejoinder, appellant's counsel asserted that no witness to such acts was produced by the State at trial. My independent review of the record confirms that no evidence concerning appellant's "acts" in this regard was adduced. Thus, it is clear that the historical fact of the prior conviction for robbery by assault was the only thing established by State's Exhibit No. 7.

Finally, defense Exhibit No. 1 informs us that appellant ultimately entered a plea of guilty to the offense in question on January 22, 1973—a time at which appellant was still sixteen years old.

In *Ex parte Menefee*, 561 S.W.2d 822 (Tex.Cr.App.1977), the Court held that subsequent to the juvenile court's waiver of its jurisdiction, certification of such action and transfer of a juvenile accused to be dealt with as an adult, an examining trial is essential to the jurisdiction of the transferee district court, and any indictment returned prior to such examining trial is void. V.T.C.A. Family Code, § 54.02(h). Thereafter, it was acknowledged that this right to an examining trial in the district court upon transfer from the juvenile court, may be waived by strict compliance with V.T.C.A. Family Code, § 51.09(a)[6] in *Criss v. State*, 563 S.W.2d 942 (Tex.Cr.App.1978). But as a concomitant, we later determined in *White v. State*, 576 S.W.2d 843 (Tex.Cr.App.1979), that no "presumption of regularity" regarding the examining trial would be indulged when the record is devoid of evidence that such inquiry has been afforded a transferred juvenile in the district court, prior to the return of an indictment.[7] See n. 6, *ante*.

Later still, in *Ex parte Trahan*, supra, we confronted the question of whether the rationale of *Ex parte Menefee*, supra, was also applicable to proceedings governed by Article 2338–1, V.A.C.S., as amended in 1967, the predecessor to Title 3 of the Family Code. Like our appellant in the instant case, Wesley Trahan was sixteen years of age at the time he committed a rape for which he was ultimately prosecuted as an adult. On review and comparison of the statutes, the Court observed that the three-step procedure, including "the examining trial," mandated by V.T.C.A. Family Code, § 54.02, was also extant in its statutory predecessor and thus, the failure to provide Trahan an examining trial pursuant to Article 2338–1, § 6(j) prior to indictment, entitled him to relief. See also, e.g., *Ex parte Buchanan*, 588 S.W.2d 596 (Tex.Cr.App. 1979).

It is therefore eminently clear that by his objection to State's Exhibit No. 7 on the ground stated and his offer into evidence of defense Exhibits 1 and 2, appellant made a prima facie showing that he was sixteen years of age at the time of the offense, as well as at the time of his 1973 conviction,[8] and that no examining trial in the district court had been afforded prior to the time he was indicted.[9] This showing was in no way met or rebutted by the State, and I note that, unlike Section 54.02, supra, its predecessor, Article 2338–1, supra, made no provision for waiver of rights by a juvenile. Cf. *Criss*, supra.

I, accordingly, would hold that the trial court, faced with this state of evidence, committed error by, nevertheless, admitting appellant's 1973 conviction at the punishment phase of his capital murder trial.

II.

The State insists the trial court's error was harmless. Arguing the admission of

---

6. "Unless a contrary intent clearly appears elsewhere in this title, *any right granted to a child by this title* or by the constitution or laws of this state or the United States *may be waived in proceedings under this title if*:
   (1) the waiver is made by the child and the attorney for the child;
   (2) the child and the attorney waiving the right are informed of and understand the right and the possible consequences of waiving it;
   (3) the waiver is voluntary; and
   (4) *the waiver is made in writing or in court proceedings that are recorded.*"
   Section 51.09(a), supra.

7. But see *Ex parte Williams*, 628 S.W.2d 454 (Tex.Cr.App.1982); and *Ex parte Alexander*, 598 S.W.2d 308 (Tex.Cr.App.1980), in which it was observed that the rule in *White*, supra, will not obtain in a postconviction writ of habeas corpus proceeding pursuant to Article 11.07, V.A.C.C.P., where the burden of proof is entirely upon the applicant.

8. Compare *Ex parte Morgan*, 595 S.W.2d 128 (Tex.Cr.App.1980).

9. Unlike in *Ex parte Williams* and *Ex parte Alexander*, both supra, appellant in the instant case introduced the entire files, including docket sheets, compiled in both the juvenile court and the district court causes.

appellant's void prior "could not have had the slightest effect of enhancing his punishment to a higher grade," the State points to the "abundance of independent evidence shedding light on appellant's violent character." See n. 3, *ante*.

The record reflects that in addition to the official record of appellant's 1973 conviction, the State offered evidence of appellant's commission of four similar extraneous transactions, each constituting an aggravated robbery, which occurred within five months of the instant offense,[10] as well as an attempt by appellant to assault the court bailiff with a letter opener during the first week of trial.[11]

But clearly, the most damning testimony presented in the punishment phase of appellant's trial was the testimony of Assistant Warden Howard Mitchell, who had been assigned to the Jester Unit II of the Texas Department of Corrections when appellant was incarcerated there pursuant to that 1973 void conviction.

Warden Mitchell testified he knew appellant "fairly well" and had dealt with him on a regular basis—an estimated eighteen times in as many months—during his incarceration. According to Mitchell, he had attempted to rehabilitate appellant who had a bad reputation for being a peaceable and lawabiding person. Based on his eleven years experience as a T.D.C. employee, his expertise in rehabilitation and corrections and his personal knowledge of appellant,

Mitchell told the jury it was his opinion that "he would be a threat to the total *population, to the inmate population.* He would be a threat to society."

Notwithstanding able crossexamination,[12] Warden Mitchell's assertion that appellant would be a threat to even the society of inmates confined in the State penitentiary was surely as compelling an argument for the jury's selection of death over life confinement as ever may be made! While I intimate no view regarding the admissibility of this opinion testimony of and by itself,[13] it cannot be gainsaid that, had the trial court properly ruled and thereby refused admission of appellant's 1973 void prior conviction, testimony regarding his conduct in prison pursuant thereto would have likewise been inadmissible. State's Exhibit 7 established the only adjudicated offense resulting in conviction offered before the jury; thus, the warden's observation of appellant which underlay his opinion resulted directly from execution of *that* conviction.

Under these circumstances I cannot say there is a reasonable possibility that the evidence admitted as a result of the trial court's error did not contribute to the jury's special verdict of "yes" to the second punishment issue. Cf. *Jordan v. State*, 576 S.W.2d 825 (Tex.Cr.App.1978); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); see also and compare *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

10. The State also elicited testimony concerning an extraneous aggravated robbery transaction which occurred on December 28, 1977; the witness, however, could not identify appellant as the perpetrator.

11. Though the bailiff's testimony indicates appellant's hands were cuffed behind his back, it is apparent that he, nevertheless, created quite a row, necessitating the assistance of the trial judge and the court reporter before the bailiff, a deputy sheriff, was able to draw his handgun and train it on appellant.

12. Warden Mitchell admitted all inmates in T.D.C. are there because they are not lawabiding and that at 135 pounds and 5'5" or 6" tall, appellant was "among the smaller men at T.D. C." He conceded appellant, in order to be a threat, would have to use a weapon, but was

only able to point to one incident in which appellant had used a "weapon:" in his capacity as a "turnkey", appellant had hit another inmate "up side the head" with the 4 inch long brass key. Mitchell admitted he had given appellant this job in spite of the fact he was ineligible for it, and that appellant had gotten the key from prison officials. Defense counsel also established through Mitchell the fact that all T.D.C. units are "maximum security," then had the witness describe in detail the strict security measures, disciplinary procedures and the average work day schedule followed on the units.

13. Appellant's twelfth ground of error contends Warden Mitchell was not shown to be qualified to offer such an opinion.

Thus, I would reverse the judgment of conviction for this error in the punishment hearing; see *Holloway v. State*, 613 S.W.2d 497 (Tex.Cr.App.1981); and *Porter v. State*, 578 S.W.2d 742 (Tex.Cr.App.1979), as well as for the error committed during voir dire. But, I fully concur in the opinion and judgment of the Court.

ONION, P. J., and ROBERTS and TEAGUE, JJ., join in this opinion as well as the opinion of the Court.