Opinion filed March 8, 2007
















 
 
  
 
 







 
 
  
 
 




Opinion filed March 8, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00228-CR 

                                                    __________

 

                                CHARLES DAVID LAMAR, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 238th District Court

 

                                                        Midland County, Texas

 

                                                 Trial
Court Cause No. CR30022

 



 

                                                                   O
P I N I O N

 

A jury convicted Charles David Lamar of the felony
offense of driving while intoxicated.  See
Tex. Pen. Code Ann. ' 49.04(a) (Vernon 2003), ' 49.09(b)(2) (Vernon Supp. 2006).  Alleged along with the primary offense were
two previous DWI convictions that enhanced the potential punishment to that of
a third-degree felony.  See Tex. Pen. Code Ann. ' 49.09(b)(2), (c)(1)(A) (Vernon Supp. 2006).  The jury assessed punishment at confinement
for a term of two years.  The jury also
recommended that appellant=s
driver=s license
be  suspended for 365 days beginning on
July 8, 2005.  We affirm.








Appellant challenges the legal sufficiency and the
factual sufficiency of the evidence in the first two issues.  In his third issue, appellant asserts that
the trial court erred in not granting a mistrial. In his fourth issue,
appellant asserts that the trial court erred in allowing the testimony by the
arresting officer as to one of the intoxication tests. 

To determine if the evidence is legally
sufficient, we must review all of the evidence in the light most favorable to
the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex. Crim. App. 2000).
To determine if the evidence is factually sufficient, the appellate court
reviews all of the evidence in a neutral light. 
Watson v. State, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App.
2006) (overruling in part Zuniga v. State, 144 S.W.3d 477 (Tex. Crim.
App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex. Crim. App.
2000); Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  Then, the reviewing court determines whether
the evidence supporting the verdict is so weak that the verdict is clearly
wrong and manifestly unjust or whether the verdict is against the great weight
and preponderance of the conflicting evidence. 
Watson, 204 S.W.3d at 414-15, 417; Johnson, 23 S.W.3d at
10-11.  The jury, as the finder of fact,
is the sole judge of the weight and credibility of the witnesses= testimony.  Tex. Code
Crim. Proc. Ann. art. 36.13 (Vernon
1981), art. 38.04 (Vernon
1979).

At 8:20 p.m. on June 23, 2004, appellant=s wife, Charity Ann Lamar, called
9-1-1.  She told the dispatcher that her
husband was Avery,
very drunk@ and was
threatening to Akick
[her] ass.@  She informed the dispatcher that her husband
had just driven off in a white company truck and that he was Adrunker than Cooter Brown.@ 
Charity told the dispatch operator that appellant was driving down one
road and was just turning left onto another. 
Midland County Sheriff=s
Deputy Edward Reyes received the radio call about the disturbance and went to
appellant=s
residence.  Charity told Deputy Reyes
that appellant was upset over their divorce and that he left the scene Adrunker than Cooter Brown.@ 
Deputy Reyes got a description of appellant=s
vehicle and went to look for appellant.








After approximately ten minutes, Deputy Reyes saw
the vehicle appellant was driving.  When
Deputy Reyes began to pursue him, appellant accelerated.  Deputy Reyes temporarily lost sight of the
vehicle and went down a few dirt roads that led to pump jacks.  Deputy Reyes drove down another dirt road and
spotted the vehicle.  The vehicle he
saw  matched the description given to him
earlier.  The vehicle was stopped and
appellant, who was the same driver Deputy Reyes spotted earlier, was in the
driver=s
seat.  Deputy Reyes approached appellant
at 9:10 p.m.

When Deputy Reyes went to the vehicle, he smelled
a strong odor of alcohol and noticed that appellant had red, bloodshot
eyes.  Deputy Reyes asked appellant for
his driver=s
license, but appellant could not find it. 
Deputy Reyes asked appellant to step out of the vehicle.  Appellant told Deputy Reyes that he drank
five beers earlier that evening.  Deputy
Reyes administered the Horizontal Gaze Nystagmus test (HGN).  Based on that information along with
appellant=s
stumbling, his admission to the consumption of alcohol, and the strong smell of
alcohol on appellant, Deputy Reyes arrested him.  Appellant refused to take a breath alcohol
test.  Appellant refused to do a
walk-and-turn test.  Deputy Reyes did not
administer the one-legged stand test, another test for intoxication.

Appellant asserts that there is no evidence to
show that appellant was intoxicated at the time Deputy Reyes observed appellant
driving.  The record shows that Charity=s 9-1-1 call was received at 8:20
p.m.  Deputy Reyes went to appellant=s house.  He stayed at the residence for a few minutes,
and after being informed that appellant was driving while drunk, Deputy Reyes
went to find him. According to the videotape (State=s
Exhibit 4), Deputy Reyes pulled up to the pickup appellant was driving at 9:10
p.m.  When Deputy Reyes found appellant
parked on an oil and gas lease, appellant told him he drank five beers.  Deputy Reyes did not observe any beer cans or
other alcohol containers around the vehicle. 
He administered the HGN test and determined that appellant was
intoxicated.  Deputy Reyes based his
conclusion on that test and on other indicators.  

The record shows that appellant was the person
about whom Charity called 9-1-1 radio dispatch. 
The record also shows that appellant drove the vehicle that was
described by Charity, that was observed being driven on the road, and that
Deputy Reyes pulled up to on the oil and gas lease.  Charity did not provide a license plate
number.  She described vehicle as a white
Chevrolet extended-cab pickup with a black grill guard and a black tool box in
the back end of the pickup.  The record
shows that the vehicle did not belong to the Lamars, but to Patterson Drilling
Company.








That time between when Deputy Reyes saw appellant
driving and when he determined that appellant was intoxicated does not in and
of itself amount to insufficiency of the evidence, which can be direct or
circumstantial.  See Johnson v. State,
517 S.W.2d 536, 537-38 (Tex. Crim. App. 1975); Weaver v. State, 721
S.W.2d 495, 498-99 (Tex. App.-Houston [1st Dist.] 1986, pet. ref=d). 
There was no dispute in the record as to whether appellant had been
driving the vehicle on city roads before Deputy Reyes arrived.  Once Deputy Reyes arrived, he determined, as
described above, that appellant was intoxicated.  The jury had an informed basis upon which to
determine the relationship, if any, between appellant=s
driving and his intoxication.  Kennedy
v. State, 797 S.W.2d 695, 696-97 (Tex. App.-Houston [1st Dist.] 1990, no
pet).

 Appellant
argues that the evidence raises an alternative and reasonable hypothesis that
appellant was sober until he arrived at the oil and gas lease.  Appellant further asserts that it was reasonable
that he was parked there for 30 to 40 minutes before Deputy Reyes arrived, that
appellant drank possibly two beers and threw the empty cans into the weeds, and
that he lost the normal use of his mental and physical faculties after he drove
in a public place.

There was an approximate 40-minute gap between the
time Deputy Reyes first saw appellant driving the vehicle described by Charity
and the time when he found the vehicle on the lease.  Deputy Reyes testified that he followed the
vehicle at some length before he temporarily lost sight of the vehicle for 8-10
minutes.  The record indicates that
Deputy Reyes followed the vehicle for about 30 minutes.  There is testimony in the record that, when
Deputy Reyes first saw the vehicle,  it
was either 8:30 p.m. or 8:50 p.m.  The
testimony reflects that appellant was not at the oil lease drinking beer during
the 40-minute gap.  We find these facts
to be legally and factually sufficient. Appellant=s
first two issues are overruled.

Appellant asserts in his third issue on appeal
that the trial court erred in not granting a mistrial when the prosecutor
elicited testimony from Deputy Reyes that, after he read appellant the Miranda
warnings,[1]
appellant invoked his right to remain silent. 
During questioning by the prosecutor of Deputy Reyes, the following
exchange took place:

Q: Did you -- okay. And you did advise him of
his Miranda warnings against self-incrimination?

 








A: Correct.

 

Q: And he properly chose to exercise those rights?

 

A: Correct.

 

After the exchange, the court sustained defense
counsel=s
objection that the question was improper. 
The prosecutor went on to add:  AI guess the only question is you did
give the warnings, maybe that=s
the point I wanted to make.@  The question was withdrawn and the trial
judge instructed the jury to Adisregard
any reference to the Defendant invoking his rights. Do not consider that for
any purpose.@  Appellant requested a mistrial, which was
denied.

In its brief, the State conceded that it
improperly referred to appellant=s
post-Miranda silence. The State argues that any harm was cured by the
court=s
instruction to the jury to disregard any reference to defendant=s invoking his rights.  We agree. 
A jury is presumed to follow an instruction to disregard as given.  Williams v. State, 937 S.W.2d 479, 490
(Tex. Crim. App. 1996); Waldo v. State, 746 S.W.2d 750, 754 (Tex. Crim.
App. 1988).  Error in admitting evidence
may be cured by an instruction to disregard except in extreme cases where the
evidence is Aclearly@ calculated to inflame the jurors and
is of such a nature that it suggests impossibility in withdrawing the
impression produced on their minds.  Waldo,
746 S.W.2d at 752.  Here, after the
instruction to disregard, the prosecutor further explained that Athe defense [attorney has] been sitting
over there for two hours talking to the witness about following the rules, and
I=m just simply asking did he follow the
rule[s].@  The court asked the prosecutor to move on to
another subject, which he did.  No harm
has been shown.  Appellant=s third issue is overruled.

In the last issue, appellant asserts the trial
court erred in allowing the arresting officer=s
testimony as to the vertical portion of the HGN test.  Deputy Reyes testified that he was qualified
to administer the HGN test.  While
demonstrating the test in front of the jury, defense counsel made the following
objection:

[DEFENSE COUNSEL]: Your Honor, there=s no testimony that this man=s qualified to give a vertical
nystagmus test. The only thing that he=s
qualified him to give testimony about is a horizontal nystagmus test. We object
to that testimony.

 

[PROSECUTOR]: I asked him if he was certified to
do Horizontal Gaze Nystagmus, and the answer was yes. That=s part of the training, too.

 








THE COURT: Would you clarify whether or not the
test that he=s
describing is a part of Horizontal Gaze Nystagmus.

 

[PROSECUTOR]: Yes. 
The last part you did, the up and down, that=s
Vertical Gaze Nystagmus, the one you went up and down, is that part of what
your=re
trained on the horizontal?

 

[DEPUTY REYES]: Yes, it is part of the rest of the
test.

 

THE COURT: Objection=s
overruled. You may continue.

 

On appeal, appellant urges that the trial court
erred in allowing Deputy Reyes=s
testimony as to the vertical portion of the HGN test on the basis that the
testimony was not shown to be reliable. 
Appellant=s counsel
neither specified the deficiency in qualifications nor objected on the basis of
reliability.  Further, he did not seek
voir dire of the witness.  Appellant has
not preserved that complaint for our review. 
Tex. R. App. P. 33.1.
Appellant=s fourth
issue is overruled. 

The judgment of the trial
court is affirmed. 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

March 8, 2007

Do not publish.  See Tex.
R. App. P. 47.2(b).

Panel consists of:  Wright,
C.J.,

McCall, J., and Strange, J.











[1]Miranda v. Arizona, 384 U.S.
436 (1966).